## SUPREME COURT.

### JAMES MCGREGOR, JR., agt. ANN G. MCGREGOR and others.

Where the object of the action was to *state the account* of the plaintiff with the *trust fund*, and to *discharge* the plaintiff *from the trust;* and accordingly the plaintiff, in the complaint, gave his version of the transaction, claiming to have paid over the whole amount into the hands of his co-trustee, except what he had paid over to the beneficiary of the fund, and showed how this had been done, and asked his discharge:

*Held*, that it was competent for the defendants to falsify such statement, by the allegations in the answer, not only by a direct denial of the allegations in the complaint, but by *affirmative allegations*, showing a disposition and present condition of the fund different from that which the plaintiff insisted upon. And unless this object in the answer had been so clumsily and ineffectually accomplished, it was error to strike out a large portion of its allegations, as containing wholly *irrelevant matter*.

Upon a motion to strike out matters in an answer for *irrelevancy*, which is the only ground stated in the motion papers, the court ought not to consider only incidentally any other question, such as whether the matter sought to be stricken out, forms the whole or a material part of a defense or a counter-claim. These questions only properly arise upon demurrer, or on the trial of the action.

As a general rule, the validity of a defense to an action is not to be tested by a motion to strike out.

*Sham* and *irrelevant* defenses may be stricken out, and matter of the same description may be stricken out on motion, or may give occasion for a motion for judgment, notwithstanding the answer. But the matter must be *palpably* sham or irrelevant.

*Albany General Term, September,* 1865.

*Before* HOGEBOOM, MILLER *and* INGALLS, *Justices.*

APPEAL from order at special term, striking out certain portions of answers as irrelevant. The facts are stated in the opinion of the court.

M. I. TOWNSEND, *for plaintiff, respondent.*

GARDNER STOW, *for defendants, appellants.*

*By the court,* HOGEBOOM, J. This is an appeal by the defendants, Ann G. McGregor and Duncan McGregor, from an order of the special term, striking out as irrelevant certain portions of their answers, respectively. These answers, though separate, are sufficiently alike, in regard to the matters involved in the motion, to enable them to be considered

together.   As the motion to strike out embraces a large por-
tion of the contents of the answers, it will be necessary to
examine both the complaint and the answers with some
detail.

The relief sought by the complaint is to establish and set-
tle the plaintiff's accounts as trustee; to relieve him from the
duties of the trust; to direct him as to the disposition of the
trust moneys remaining in his hands or to be accounted for
by him; to declare satisfied a certain mortgage from the
plaintiff to Gregor McGregor; and to obtain such other
relief as should be proper.

The facts upon which this relief is sought, briefly stated,
are that one Gregor McGregor, deceased in 1845, made his
will, whereby, in the 7th clause thereof, he bequeathed to
his brothers, James McGregor, Jr., and Duncan McGregor
(plaintiff and one of the defendants) a fund of $2,000, upon
*trust*, to pay over the income thereof to Ann McGregor (one
of the defendants), wife of Alexander McGregor, during her
life, and after her death, without children, to her husband
during his life, keeping the fund invested on bond and mort-
gage in their names as trustees; and in case of her death,
leaving children, to pay over the principal of the fund to the
next of kin of Alexander living at the time both she and her
husband shall have died.

That in 1846 the executor of said Gregor McGregor,
deceased, paid over to the plaintiff said trust fund of $2,000,
as follows:   $400 thereof in a certain mortgage called the
Conklin mortgage, and mentioned in said will as a part of
the trust fund; also a mortgage from the plaintiff to Gregor
McGregor, of $1,291.46, with interest, also mentioned in the
will as a part of the trust fund; and the remainder of said
sum of $2,000 in cash.

That said Duncan McGregor having requested the plain-
tiff to put said trust fund in his hands, the plaintiff, in accord-
ance therewith, on the 26th of February, 1850, assigned to
him a mortgage given by one Francis Myers to the plaintiff,

whereon there was due nearly $1,000, $539 whereof was assigned by plaintiff and received by said Duncan as a part of the trust fund; the balance thereof being assigned to pay a debt of the plaintiff to said Duncan. Plaintiff also delivered to said Duncan the said mortgage of the plaintiff to Gregor McGregor, there being then due thereon $1,341.10, and the said Duncan still holds same as such trustee. That plaintiff paid to Ann McGregor the interest on the fund up to 12th November, 1851.

That in 1852 Ann McGregor and her children, Gregor McGregor and Gardner McGregor, commenced a suit in the supreme court of this state against the plaintiff, the defendant Duncan, and against Alexander McGregor, alleging that the trust fund had been invested in lands in the state of Iowa, and claimed as relief therein that the Iowa lands should be adjudged to be the trust fund. That Duncan McGregor answered, concurring with the plaintiffs therein in desiring the same judgment. That the plaintiff answered, denying the investment of the trust funds in Iowa lands. That in March, 1855, the supreme court adjudged that no part of the trust funds were in Iowa lands, and that the fund was still in the hands of the trustees. That appeals were subsequently taken to the general term of the supreme court and to the court of. appeals, and in both of said courts the judgment affirmed; the latter judgment being entered about 10th of October, 1862, and the remittitur filed in the supreme court on the 18th of October, 1862, whereby it became the judgment of the latter court. That pending the appeal in the court of appeals, Alexander McGregor died, leaving a will, wherein Duncan McGregor was appointed executor, and as such executor he was substituted as a party in said suit in the place of the said Alexander McGregor.

That since the fall of 1852 the said Duncan and Ann G. McGregor ever have been and now are so much at variance with the plaintiff that he cannot discharge his duty as such trustee, in connection with said Duncan, advantageously to

said trust, on account of the extreme hostility of said Duncan and Ann to the plaintiff.

The answer of Duncan McGregor sets forth in substance as follows (the portions moved to be stricken out being embraced in brackets):

That Gregor McGregor died in New York in 1845, leaving a will bequeathing to defendant and James McGregor, Jr., a fund of $2,000, in trust for Ann and Alexander McGregor and their children, in the 7th and 8th clauses thereof.

(1st.) [That previous to the making of said will Alexander resided at Prairie Du Chien, in Wisconsin, insolvent, which was the probable reason of the *trust*, instead of a direct bequest to Alexander. That in 1845 Alexander had purchased certain lands in the county of Clayton, Iowa (describing four several parcels), the title to which was in the plaintiff, but for Alexander's benefit. That he had also purchased certain other lands in Clayton county, Iowa (describing five other parcels), the title to which was taken in the name of plaintiff and defendant, but at the instance and for the benefit of Alexander, and were to be conveyed to him upon request. Alexander and one Burnett, who owned the two first pieces in common, established a ferry from them across the Mississippi river to Prairie Du Chien. Alexander agreed to purchase of Burnett his interest therein for $1,500, and applied to plaintiff and defendant for the money necessary to effect the purchase; and they, after consultation, agreed that plaintiff should send to Alexander $1,500 for such purpose, which, with $500 lent by James to Alexander, would be equivalent to the $2,000 trust fund, and this should constitute the trust fund, and James should have for his own use the original $2,000 trust fund. Accordingly, James sent out the $1,500, and Alexander used it for the purchase aforesaid, taking title in name of James, but for Alexander's benefit. In 1846 James received the $2,000 original trust fund, and applied same to his own use. The lands in Iowa rose

in value and became worth about $100,000; and James being applied to, about July, 1847, to convey them in trust, denied and repudiated the agreement, and refused to perform. The result of this was hostile feelings between the parties, and danger of expensive and angry litigation.]

(2d.) [To restore amicable relations], and to avoid litigation, and to make a final investment of the trust fund, said James of the one part, and Ann and Alexander for themselves and their children of the other part, agreed, in November, (3d.) [1851, to settle and compromise all their difficulties on these terms:

[1. James should quit-claim to Ann all his interest in lands at Prairie Du Chien, in Wisconsin, and McGregor, in Iowa (describing the lands in Wisconsin and Iowa).

[2. James should assign to Ann a mortgage of Alexander to Gregor McGregor, executed in 1842, for $4,000, to which Alexander became entitled as residuary legatee under the will of Gregor McGregor, deceased.

[3. James should assign to Ann a certain land office certificate, issued to S. B. Olmsted, by him assigned to plaintiff in trust for Alexander, who paid for the lands therein mentioned.

[4. James should endeavor, as Ann's agent, to purchase for her the King lot, in Iowa (describing same).

[5. The ferry and appurtenances should be the property of Ann.

[6. Ann should execute to the plaintiff her note for $4,500, payable six years after date.

[7. On payment of said note, plaintiff should execute to said Ann a deed of conveyance for all of said lands.

[8. James and Alexander should execute to each other mutual receipts in full of all claims and demands.

[9.] Ann should execute to plaintiff receipts for the interest which had accrued on said trust fund of $2,000, as if same had been regularly paid, although none had ever been paid.

10. Plaintiff was to apply to some court in the state of New York to obtain an order to discharge from the trust the trustees under McGregor's will, and to substitute persons resident in Iowa.

11. Ann should execute a mortgage on certain of the lands (numbering them), with a bond to the trustees for the trust fund of $2,000, the interest payable semi-annually, so as to constitute the investment thereof in conformity with the McGregor will.

To carry into effect the compromise and settlement, plaintiff, by deed of 10th November, 1851, conveyed to Ann all his interest in the lands last mentioned, and numbered 1, 2, 3, 4, 5, 6, in Iowa, and (4th.) [by another deed of November, 1851, the lands in Wisconsin herein described next preceding the lands in Iowa as numbered. Plaintiff also assigned to Ann, by writing of Nov. 17, 1851, the Olmsted land office certificate; which deeds and assignment were deposited with George D. Gardner, of Iowa, to be delivered to Ann when her note was paid. Plaintiff also, by writing of November 15, 1851, assigned and delivered to Ann the aforesaid mortgage of Alexander to Gregor McGregor. Ann delivered to plaintiff the sum to enable him, as her agent, to purchase for her the King lot; and plaintiff, about 30th November, 1851, purchased same, paying thereon (of Ann's money) $20, and giving his obligation for the residue, which consisted of certain claims of McGinnis, liens on said land. Plaintiff, in further fulfillment of said agreement, did, sometime in November, 1851, deliver to Ann all the personal property belonging to the ferry. Ann executed and delivered to plaintiff her promissory note, dated Nov. 15, 1851, payable in six years after date, with annual interest. Alexander and the plaintiff executed to each other receipts in full of all claims and demands.]

Ann executed and delivered to the plaintiff receipts for the interest on the aforesaid bequest of $2,000, as having been

paid to her by the trustees, though in fact they had paid her nothing.

In March, 1852, in further execution of the agreement, plaintiff obtained an order of the supreme court of New York, granting leave to have trustees of the fund invested there (probably a clerical mistake, as the other answer reads, to have trustees of the fund appointed in Iowa, and to have the fund invested there), pursuant to the McGregor will, and to discharge plaintiff and defendant from the obligation of the trust. Under said order, Ann procured the appointment in Iowa of Samuel Murdock and George D. Gardner as trustess under the will, in lieu of those named in the will.

(5th.) [Though the whole trust fund was in plaintiff's hands, he has not paid over same, or any part thereof, to said Murdock and Gardner, or either of them. Before the maturity of the note, Ann and Alexander were advised by counsel, and by defendant, that the agreement between plaintiff and defendant, for investment of trust fund, was valid, and could and ought to be enforced against plaintiff and the lands, and that last aforesaid agreement for a final settlement was of no effect, and would not bind the minor children of Alexander; wherefore, to protect their rights, an action was commenced, about 25th December, 1862, in supreme court of New York, in which Ann and her children were plaintiffs, and James and Duncan and Alexander McGregor were defendants, to determine whether the trust fund was in fact invested in said lands, according to said agreement. The action was finally determined in the court of appeals, where it was held that the trust fund was not so invested. Said action was commenced so early that it was hoped it might be ended before the maturity of said note, and so that, if determined adversely to plaintiff, said Ann could pay said note and otherwise perform said agreement; but said cause was protracted so that the decision of the court of appeals was not rendered till October, 1862. Said Ann was advised that it would be imprudent and unsafe

to pay said note during the pendency of said action, and therefore she did not pay it. Afterwards, on further reflection and advice, she did, in 1859 or 1860, offer to plaintiff to pay it, and tendered the amount due, and demanded a deed; but plaintiff refused said offer, tender and demand.]

After the decision of the court of appeals, and in December, 1862, said Ann executed to said Murdock and Gardner, trustees, her bond for said trust fund of $2,000, with interest; the mortgage being on the lands which, by the agreement of 1851, were to be conveyed to her by the plaintiff, being an ample security for said fund.

(6th.) [After said agreement of 1851 for a final settlement, Alexander and Ann made expensive improvements, on buildings and otherwise, on said lands, which greatly enhanced their value.]

Pending said action, and about 12th December, 1858, Alexander died, leaving said Ann and said children him surviving, and leaving a will appointing G. D. Gardner, F. D. Bissell and defendant executors, and Ann executrix, whereby he devised all his real estate to his executors and executrix in trust to pay debts and legacies, among which is a large legacy to defendants Gregor and Gardner. Said will was duly admitted to probate in Clayton county, Iowa, in February, 1859, and letters testamentary thereon issued. Alexander had also real and personal property in Warren county, New York, and defendant obtained letters testamentary there, and is the only legal representative of deceased in New York. By said will, the property of deceased in New York was devised and bequeathed to defendant in trust. The mode proposed by the agreement of 1851, for securing said trust fund, would effectually secure same, and conform to the will of McGregor as to its investment.

Defendant prayed as affirmative relief that (7th.) [said agreement on final settlement be specifically performed; the deeds by plaintiff to Ann, left with Gardner, to be delivered to her on conditions, be confirmed as valid, conveying said

estate on payment of $4,500, with interest due thereon] that the bond and mortgage executed by Ann for $2,000, with interest, and delivered to Gardner and Murdock, as trustees, be confirmed as the legal investment of the trust fund under the McGregor will; that in such event the defendant be discharged from the trust and of all obligations arising therefrom; or that such other relief be afforded as is proper.

Defendant denies specifically each and every allegation in the complaint inconsistent with or contradictory of the matters above set forth, and every allegation affecting prejudicially the equities herein set up.

The object of the action is to state the account of the plaintiff with the trust fund, and to discharge the plaintiff from the trust. To accomplish that object, it is essential to ascertain the condition of the fund when it came into the hands of the plaintiff, what changes (if any) it has since undergone, what has been done with it by the plaintiff, and what is the present amount and character of the assets and in whose hands they are, at least, whether they are in the hands of the plaintiff. Accordingly, the plaintiff, in the complaint, gives his version of the transaction; claims to have paid over the whole amount into the hands of his co-trustee, except what he has paid over to the beneficiary of the fund, and shows how this has been done, and asks his discharge.

It is of course competent for the defendants to falsify this statement by the allegations in the answer, not only by a direct denial of the allegations in the complaint, but by affirmative allegations showing a disposition and present condition of the fund different from that which the plaintiff insists upon. This, I think, was (in part, at least) the object of the answers. It remains to see whether it has been so clumsily and ineffectually accomplished that a large portion of the answers should be struck out as containing wholly irrelevant matter.

The scope of the answers seem to be:

1. To show that, by an agreement made between the

trustees and the beneficiaries of the trust, about 1845 or 1846, a sum of money equal in amount to the principal of the trust fund was to be and was advanced by the plaintiff to Alexander McGregor, to be invested and was invested in Iowa lands and ferry rights, thereafter to constitute the trust fund under the will; and that in consideration thereof the plaintiff was to have the original trust fund as his own private property.

2. To show that, owing to hostile feelings engendered between the plaintiff and the beneficiaries of the fund, growing out of an alleged refusal on the part of the plaintiff, in 1847, to carry that agreement into effect by conveying the Iowa property (the title to which had been taken in his name, but in trust for them) to them, this agreement was abandoned and a new one in 1851 substituted therefor, between the plaintiff of the one part, and Ann and Alexander McGregor for themselves and their children of the other part, the object of which was, among other things, to restore amicable relations, to avoid litigation, *and to make a final investment of the trust fund.* This new agreement was in substance that the plaintiff should transfer to Ann McGregor certain securities; should convey to her certain lands in Iowa and Wisconsin, which conveyance should be made and become absolute on the payment by said Ann of a note of $4,500 executed by her to the plaintiff, and payable six years after date; that mutual receipts in full should be executed between James and Alexander McGregor; that Ann should execute to the plaintiff receipts in full for the interest of the trust fund, though no payment of said interest had been in fact made; that an application should be made to the courts of New York for a discharge of the trustees named in the will and the substitution as trustees of persons resident in Iowa; and that said Ann McGregor should execute to the trustees her bond a mortgage upon a portion of said lands, for the trust fund of $2,000, which should constitute the investment thereof under and in conformity with

the McGregor will. The answers proceed to aver actual performance of most of the provisions of this agreement; indeed, I believe all of them which contemplated a then present performance.

Before the maturity of the note, according to the aver ments in the answer, the said Ann and Alexander were advised that this agreement was of no effect and not binding on their children (who were infants), and that the first agree ment (of 1846) was valid and ought to be enforced. They brought an action to test this question, and it was decided adversely to such alleged agreement. This decision, it was hoped, would have been made prior to the maturity of the note, but it was not made until 1862, and having been advised that it was unsafe to pay the note until such decision, she did not pay it at maturity. Afterwards, however, in 1859 or 1860, she offered to pay, tendered the amount, and demanded a deed; all which were refused by the plaintiff. After the decision in the court of appeals, and in December, 1862, she executed to the Iowa trustees the bond and mort gage to secure the trust fund. Pending the action, Alexan der McGregor died, and Duncan McGregor, as his executor, was made a party defendant in his place.

The answers ask as affirmative relief, that the agreement (of 1851) be specifically performed, the amount so invested in Iowa declared a legal investment of the trust fund under the will, and for further relief.

The *first* matter stricken out by the order appealed from is that which alleges the substitution of Iowa property for the original trust fund, the appropriation of the latter to the plaintiff's own use, the taking of title to the Iowa property in the name of the plaintiff, and his subsequent refusal to convey same in trust for the beneficiaries.

Considered by themselves, it cannot be denied that these allegations were material by way of defense, and could not properly be struck out as irrelevant. Taken in connection with the fact subsequently averred both in the complaint

and answer, that the court held that the trust fund had not been transferred to Iowa, either because no such agreement had been made, or the agreement was invalid, the matter did not thereby become *irrelevant*, however much its force as a defense might be thereby impaired.   If the fact were as the defendant alleged, that the agreement (of 1846) was actually made, and that another agreement (of 1851) was substituted therefor, it cannot be said to have been *irrelevant* to have alleged the facts just as they took place, in the order of their occurrence.

The *second* matter stricken out by the order is contained in the words "to restore amicable relations between the parties."   This is alleged as one of the objects of the substitution of the agreement of 1851 for that of 1846, and in immediate connection with the fact that the refusal of the plaintiff to perform the agreement of 1846 had engendered hostile feelings between the parties.   I do not regard the matter as *wholly* irrelevant, and certainly not as matter by which the plaintiff is *aggrieved*, the more especially as the plaintiff had distinctly averred as one of the grounds for seeking a release from his trust relations that unfriendly feelings existed between these very parties.   If this were a proper averment, it could not be out of place in the defendants to aver the contrary.

The *third* matter stricken out is that which alleges the *substituted* agreement of 1851, or a *part thereof*.

I think this matter was relevant and material: 1. Because it alleged the *existing* agreement and understanding between the parties in relation to the trust fund; 2. Because it showed substantially, in connection with subsequent averments, that it was yet in the plaintiff's hands, or liable to be accounted for by him, on account of his not having performed his part of the agreement; 3. Because, thus connected, it showed that the plaintiff was not entitled to the judgment which he sought, and that the allegations in the complaint were not true; 4. Because, in the matter thus

proposed and ordered to be stricken out, the plaintiff has *emasculated* the matter of the defendant's defense, striking out portions of a distinct defense and leaving in other portions, as for example, among the latter, that it was agreed that Ann should exectte to the plaintiff receipts for the interest which had accrued on the $2,000 as if regularly paid, though in fact not paid. This matter, if material, as I think it was, was entitled to stand in the defendant's answer, as it was therein alleged as a *part* of an agreement embracing other important matters, and not as if it was a distinct and *disconnected* averment by itself.

The *fourth* matter stricken out is that which alleges the partial performance, by both parties of the agreement of 1851, or of a *part thereof.*

The same remarks apply to this as to the last previous matter. If the latter is entitled to stand then this should be, for the allegations are closely connected and more or less dependent upon each other. If the question be, whether this is a valid and existing agreement between the parties, it cannot be *irrelevant* to aver *partial performance* thereof, as well as the *original making* of the agreement. To this matter, also, the remark is especially applicable; that the plaintiff on moving to strike out, and procuring the order of the court to that effect, has *dissected* a series of allegations having direct connection with and dependence upon each other —allowing some of them to stand, and striking out others— thus placing the defendants before the court in a false position, and different from that which they had assumed in their answer. For example, the plaintiff allows the allegation to stand; that on execution of the agreement (of 1851), the plaintiff conveyed to Ann all his interest in the lands in Iowa, and strikes out the allegations directly following and connected therewith; that he also conveyed to Ann certain other lands in Wisconsin, and that these deeds (instead of being delivered) were deposited with George D. Gardner of Iowa, to be delivered to Ann when her note was paid. So, also, the alle-

gation is allowed to stand, that Ann executed and delivered to the plaintiff receipts for the interest on the $2,000, as having been paid to her, though in fact not paid, while other allegations are stricken out, showing how and for what reason such receipts were executed, and that they were in execution of an agreement containing other important and dependent provisions.

The *fifth* matter stricken out is that which alleges an excuse by Ann, for not meeting and paying her note of ($4,500) at maturity, to wit: advice that the agreement under which it was given, was invalid, and that the former agreement (of 1846) was operative; the institution of a suit to determine this latter question; advice that it was imprudent and unsafe to pay that note until such suit were ended; nevertheless, a subsequent offer to pay, a tender of the amount, and demand of a deed, with all which plaintiff refused to comply.

I think this matter was not irrelevant. Defendants set up this agreement (of 1851) as an existing and operative one between the parties, and of which they asked a specific performance. It was not irrelevant to show an excuse for not performing it in some respects in point of time, strictly according to its terms, and a subsequent tender of performance.

In connection with this matter thus stricken out and immediately preceding it in the answer, is an allegation also stricken out that though the whole trust fund was in plaintiff's hands he had not paid over any portion of it into the hands of the Iowa trustees. The allegation in regard to the appointment of these trustees in place of those named in the will, is permitted to stand. If so, the allegation that the plaintiff had retained the whole trust fund in his hands, and had not paid over same to the Iowa trustees, ought, I think, also to stand.

The *sixth* matter stricken out is a clause stating, that after the agreement of 1851, the beneficiaries made expens-

ive improvements upon the property contemplated to be held in trust for their benefit.

If specific performance was proper relief for the defendants to ask, it was allowable to state this fact as a reason for it; if the agreement were in any way proper to be maintained. I do not see why this fact, as contributing to such a result, was not proper to be stated. If the other matter is to stand, I think this should do so; and being unprejudicial to the plaintiff, I see no occasion for striking it out, unless all the allegations in regard to the agreement respecting the trust fund, are stricken out, in which case it would probably be incongruous as not connected with any subject matter in the answer.

The *seventh* matter stricken out is such portion of the relief sought, as asks a specific performance of the agreement of 1851, and the delivery of the deeds (held in escrow) upon payment of the $4,500 note. The propriety of this prayer depends upon the question whether any matter relating to that agreement, shall be allowed to stand in the answer. If it is so allowed, then the prayer, whether proper to be stated or not, should be allowed to remain, as it would be a very rigid and uncommendable exercise of judicial power to refuse to a party permission to pray for such relief, as he believed to be proper upon the facts alleged. It is only in the event that all the previous matter supposed to be objectionable, that it would be admissible to strike out this prayer, as wholly inapplicable in any point of view to the facts alleged, and therefore, likely to confuse and mislead.

On the whole, I am of opinion that all the matter objected to should be allowed to stand, and that the order should be reversed.

In coming to this conclusion, I have confined myself to an examination of the matter stricken out, on the single ground of *irrelevancy*. This is the only ground stated in the moving papers, and the only one we ought to consider.

I have, therefore, not considered, except to a very slight

degree, the question whether the matter stricken out forms the whole or a material part of a defense, or a counterclaim. Such questions only properly arise upon demurrer, or on the trial of the action, unless the matter objected to be palpably frivolous or irrelevant to any possible issues in the action, presented by the papers. As a general and almost universal rule, the validity of a defense to an action, is not to be tested by a motion to strike out. It is true, *sham* and *irrelevant* defenses may be stricken out. And matter of the same description may be stricken out on motion, or may give occasion for a motion for judgment, notwithstanding the answer. But the matter must be *palpably* sham or irrelevant. It would infringe unwarrantably upon legal rights, if any other interpretation were put upon these sections of the Code.

Nor is it necessary to determine absolutely, whether the matter objected to be sufficient to operate as the foundation of a counterclaim, or of affirmative relief, although it is certainly plausable to say, that a party who asks to have his accounts finally settled, and to be discharged absolutely from the trust, may first be asked to consummate any valid contract, which he has made in regard to the trust fund. But it suffices, if the matter objected to be in any wise proper as a *defense* (of any description) to the action, or in any wise relevant to such a defense.

Nor have I considered the question whether the offensive matter, or matter of a like description, has been stricken out by order of the court, from a previous answer in the same action. The motion is not founded upon that ground, and the facts stated in the affidavit do not raise that question. With the papers on this motion there have been, however, handed to the court the former answer put in in 1863, with the portions marked as stricken out by the order then entered, and also the brief opinion then written granting the motion to strike out. It certainly appears that some of the matter then stricken out, was substantially similar to some of that

embraced in the present order. But from an inspection of the opinion it will be seen, that the decision was not made altogether upon the ground, that the matter was irrelevant or redundant, but upon the ground that it was *either* of that character *or* so loosely and inartificially pleaded, that it ought not to stand. The relevancy of the matters alleged, did not clearly appear, either in the mode of presenting them in the pleading, or on the argument of the motion, and the order to strike out was granted (as appears by the opinion), without prejudice to put in an amended answer, showing the falsity of the matters set forth in the complaint, or the possession by plaintiff of additional (and it might have been added " or different") trust funds, besides those stated in the complaint, or the possession of them under a different, new or substituted trust—or seeking pertinent relief adapted to such a state of facts.

The reservation, I think, was, as it was doubtless intended to be, sufficiently broad to enable the defendant to incorporate in a pleading properly framed, matters containing a plausible defense, so as to enable the adverse party to test the validity thereof by demurrer; or, if not constituting by themselves, a separate and independent defense, to enable the court to test their validity or sufficiency on the trial of the action.

I think this has been done in the present case, with sufficient effect properly to protect them from a successful motion to strike out for *irrelevancy*.

In my opinion, the order appealed from should be reversed with costs, but without prejudice to a demurrer on the part of the plaintiff to the answer, or to such portions thereof as he shall be advised; and the plaintiff is allowed twenty days after a copy of the order entered on this motion is served on him to interpose such demurer, or to reply to said answer as he shall be advised

MILLER, J., concurred.

INGALLS, J., dissented.